1  WHITE O'CONNOR FINK & BRENNER LLP
     Lee S. Brenner (STATE BAR NO. 180235)
2    Edward E. Weiman (STATE BAR NO. 193290)
     Tami Kameda (STATE BAR NO. 245628)
3  10100 Santa Monica Boulevard, Twenty-Third Floor
   Los Angeles, California 90067-4008
4  Telephone: (310) 712-6100
   Facsimile: (310) 712-6199
5  lbrenner@whiteo.com
   eweiman@whiteo.com
6  tkameda@whiteo.com

7  Attorneys for Defendants Chris Rock
   Enterprises, Inc., Home Box Office,
8  Inc. (erroneously sued as HBO Films Inc.),
   Roadside Attractions LLC and Liddell
9  Entertainment LLC

10

11                 **UNITED STATES DISTRICT COURT**

12        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14  REGINA KIMBELL, an individual,          CASE NO. CV09-07249 DSF(Ex)
    d/b/a VIRGIN MOON
15  ENTERTAINMENT,                          The Honorable Dale S. Fischer

16        Plaintiff,                        **NOTICE OF MOTION AND
                                            MOTION OF DEFENDANTS
17     v.                                   CHRIS ROCK ENTERPRISES,
                                            INC., HOME BOX OFFICE, INC.,
18  CHRIS ROCK, an individual,              ROADSIDE ATTRACTIONS LLC,
    CHRIS ROCK ENTERPRISES, INC.,           AND LIDDELL ENTERTAINMENT
19  a Delaware corporation; HBO FILMS,      LLC FOR ATTORNEYS' FEES**
    INC., a Delaware corporation;
20  ROADSIDE ATTRACTIONS, LLC,              Date:      December 7, 2009
    a California limited liability company,;  Time:      1:30 p.m.
21  LIDDELL ENTERTAINMENT, LLC,             Crtrm.:    840
    A California limited liability company,
22  and DOES 1 through 10, inclusive,       Action Filed:  October 5, 2009
                                            Trial Date:    None
23        Defendants.
                                            *[Declaration of Lee S. Brenner and
24                                          [Proposed] Order filed concurrently
                                            herewith]*
25

26

27

28
   246428.1.doc
   _____
      NOTICE OF MOTION AND MOTION OF DEFENDANTS FOR ATTORNEYS' FEES

1 | TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that on December 7, 2009, at 1:30 p.m., or as soon

3 | thereafter as the parties may be heard, before the Honorable Dale S. Fischer, United

4 | States District Judge, in Courtroom 840 located at the Roybal Federal Building, 255

5 | East Temple Street, Los Angeles, CA 90012, defendants Chris Rock Enterprises,

6 | Inc., Home Box Office, Inc. (erroneously sued as HBO Films, Inc.), Roadside

7 | Attractions LLC and Liddell Entertainment LLC (collectively, "Defendants") will

8 | and hereby do move this Court for an order granting Defendants their reasonable

9 | attorneys' fees and costs in the amount of $ 80,000, pursuant to Section 505 of the

10 | Copyright Act of 1976 and Rule 54(d) of the Federal Rules of Civil Procedure.

11 | Defendants' actual fees and costs were well over $80,000 to oppose the meritless

12 | "emergency" application for a temporary restraining order and motion for a

13 | preliminary injunction filed by Plaintiff Regina Kimbell ("Plaintiff"). In particular,

14 | Defendants' fees and costs exceeded $ 35,000 in connection with Plaintiff's

15 | application for a temporary restraining order. In addition, Defendants incurred in

16 | excess of $ 45,000 in fees and costs in connection with Plaintiff's motion for a

17 | preliminary injunction.

18 |     Good cause exists to grant this motion: (1) Defendants are the prevailing

19 | parties; (2) Defendants are entitled to an award of their reasonable attorneys' fees

20 | pursuant to Section 505 of the Copyright Act; and (3) The grant of an attorneys' fees

21 | award to Defendants furthers the purposes of the Copyright Act. Notably,

22 | Defendants are not asking for all of their fees and costs in connection with Plaintiff's

23 | objectively unreasonable copyright infringement action. Defendants request only

24 | that Plaintiff be required to reimburse Defendants for at least a portion of the fees

25 | and costs which she forced Defendants to incur.

26 |     This Motion is made upon this Notice of Motion and Motion, the

27 | accompanying Memorandum of Points and Authorities, and the Declaration of Lee

28 | S. Brenner, all filed concurrently herewith; the pleadings and papers on file in this

246428.1.doc
1

1   action; and upon such other oral argument and/or documentary matters as may be

2   presented to this Court at or before the hearing of this Motion.

3      This Motion is made following the conference of counsel pursuant to Local

4   Rule 7-3, which conference was held on October 30, 2009.

5

6   DATED: November 4, 2009 WHITE O'CONNOR FINK & BRENNER LLP

7                              Lee S. Brenner
                               Edward E. Weiman
8                              Tami Kameda

9                              By     /s/ Lee S. Brenner
10                                    Lee S. Brenner
11                             Attorneys for Defendants Chris Rock Enterprises,
                               Inc., Home Box Office, Inc., Liddell Entertainment
12                             LLC, and Roadside Attractions LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

246428.1.doc
                                        2

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................. 1

II.  FACTUAL BACKGROUND ............................................................ 3

    A.   Plaintiff Intentionally Delays Seeking Injunctive Relief ........................ 3

    B.   The Court Denies Plaintiff's Application for a TRO ............................. 4

    C.   Plaintiff Makes Little To No Effort To Support Her Motion For A Preliminary Injunction, But Makes An Enormous Effort To Issue Press Releases Regarding Her Claims And Her Film ................... 5

    D.   The Court Denies Plaintiff's Request For A Preliminary Injunction And, In Response, Plaintiff Quickly Dismisses Her Complaint ...................................................................................... 6

III. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES PURSUANT TO THE COPYRIGHT ACT ....................................... 7

    A.   Governing Standards For Attorneys' Fees Under The Copyright Act ............................................................................................. 7

    B.   Defendants Should Be Awarded Their Attorneys' Fees ......................... 8

        1.   Defendants Obtained Complete Success In This Action ............. 8

        2.   Plaintiff's Copyright Claim Was Both Objectively Unreasonable And Frivolous ....................................................... 9

        3.   Plaintiff's Improper Motive ..................................................... 10

        4.   Awarding The Defendants' Attorneys' Fees Will Deter The Pursuit Of Manifestly Unreasonable Copyright Infringement Claims ............................................................... 12

    C.   Awarding Attorneys' Fees To Defendants Furthers The Purposes Of The Copyright Act ........................................................................ 13

IV.  UNDER THE LODESTAR APPROACH, THE DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES IN THE AMOUNT OF $80,000 ...... 13

V.   CONCLUSION ............................................................................... 17

1

## **TABLE OF AUTHORITIES**

2
**Page**

3

4 **CASES**

5 *Adsani v. Miller, PMA,*
6 No. 94 CIV. 9131 (DLC), 1996 U.S. Dist. LEXIS 13740 (S.D.N.Y.
Sept. 19, 1996)....................................................................................9

7 *Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.,*
No. 01 Civ. 10135 (SAS), 2003 U.S. Dist. LEXIS 19086 (S.D.N.Y.
8 Oct. 24, 2003) ....................................................................................9

9 *Berry v. Hawaiian Express Serv.,*
No. 03-00385 SOM-LEK, 2006 U.S. Dist. LEXIS 87748 (D. Haw.
10 Dec. 4, 2006) ....................................................................................11

11 *Burlington v. Dague,*
505 U.S. 557 (1992) ..........................................................................14
12
*D'Emanuele v. Montgomery Ward & Co., Inc.,*
13 904 F.2d 1379 (9th Cir. 1990)...........................................................14

14 *Diamond Star Bldg. Corp. v. Freed,*
30 F.3d 503 (4th Cir. 1994)...............................................................11
15
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
16 499 U.S. 340 (1991) ..........................................................................13

17 *Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994) ...................................................................7, 8, 13
18
*Ford Motor Co. v. Kuan Tong Indus. Co., Ltd.,*
19 697 F. Supp. 1108 (N.D. Cal. 1987)..................................................15

20 *Funky Films v. Time Warner Entm't Co., L.P.,*
462 F.3d 1072 (9th Cir. 2006)...........................................................10
21
*Gates v. Deukmejian,*
22 987 F.2d 1392 (9th Cir. 1992)...........................................................14

23 *Historical Research v. Cabral,*
80 F.3d 377 (9th Cir. 1996)...............................................................7
24
*Hogan Sys., Inc. v. Cybresource Int'l, Inc.,*
25 158 F.3d 319 (5th Cir. 1998).............................................................7

26 *Kerr v. Screen Guild Extras, Inc.,*
526 F.2d 67 (9th Cir. 1975)...............................................................14

27

28

*Love v. Mail on Sunday*,
No. CV 05-7798 ABC (PJWx), 2007 U.S. Dist. LEXIS 97061 (C.D.
Cal. Sept. 7, 2007) ......................................................................11, 12, 16

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996)..................................................8, 9, 11, 12

*Mattel, Inc. v. Walking Mt. Prods.*,
No. CV 99-8543 RSWL (RZx), 2004 U.S. Dist. LEXIS 12469 (C.D.
Cal. June 21, 2004) .......................................................................11

*McGrath v. County of Nevada*,
67 F.3d 248 (9th Cir. 1995) ....................................................14, 15

*Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*,
No. CV 05-7686 AHM (FMOx), 2007 U.S. Dist. LEXIS 96378 (C.D.
Cal. Dec. 20, 2007)..........................................................................11

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) ....................................................14, 15

*Oviatt v. Pearce*,
954 F.2d 1470 (9th Cir. 1992) .......................................................15

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003).........................................................14

*Sure Safe Indus., Inc. v. C & R Pier Mfg.*,
152 F.R.D. 625 (S.D. Cal. 1993).................................................14

*Thompson v. Gomez*,
45 F.3d 1365 (9th Cir. 1995).........................................................3

*Van Gerwen v. Guarantee Mut. Life Co.*,
214 F.3d 1041 (9th Cir. 2000).......................................................14

*Watson v. Country of Riverside*,
300 F.3d 1029 (9th Cir. 2002).........................................................8

*Williams v. Crichton*,
891 F. Supp. 120 (S.D.N.Y. 1994) .................................................9

*Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*,
140 F. Supp. 2d 111 (D. Mass. 2001), *aff'd*, 259 F.3d 25 (1st Cir. 2001)......11

**STATUTES**

17 U.S.C. § 505.................................................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Defendants Chris Rock Enterprises, Inc., Home Box Office, Inc. (erroneously sued as HBO Films, Inc.), Roadside Attractions LLC and Liddell Entertainment LLC (collectively, the "Defendants") respectfully request an award of attorneys' fees pursuant to Section 505 of the Copyright Act and Rule 54(d) of the Federal Rules of Civil Procedure. Under well-settled Supreme Court and Ninth Circuit law, the Court has discretion to award Defendants their attorneys' fees. By way of this motion, Defendants are *not* asking for *all* of their fees and costs in connection with the meritless copyright infringement action brought by Regina Kimbell ("Plaintiff"). They are merely requesting that Plaintiff bear some responsibility for reimbursing Defendants for at least a *portion* of the fees and costs which she forced Defendants to incur – $35,000 in connection with Plaintiff's meritless application for a temporary restraining order and $45,000 in connection with Plaintiff's unreasonable motion for preliminary injunction.

As became clear once the dust settled on Plaintiff's so-called "emergency" application for injunctive relief,[1] the two works at issue – Plaintiff's *My Nappy Roots* and Defendants' *Good Hair* – did not resemble each other. A simple comparison of the two movies showed no substantial similarity whatsoever between them within the meaning of the Copyright Act.

/ / /

---

[1] As Plaintiff conceded, *Good Hair* had been publicly shown as early as January 2009 and Plaintiff knew about *Good Hair*'s planned theatrical release since August 2009. Plaintiff nevertheless waited until less than three (3) days before *Good Hair*'s release before seeking "emergency" injunctive relief. Cast in its most charitable light, the good faith of Plaintiff's litigation strategy is highly suspect.

246428.1.doc

1

1  Finding that the two works were not substantially similar even on the basis of
2  Plaintiff's own allegations, the Court denied Plaintiff's application for a temporary
3  restraining order and "strongly suggest[ed]" to Plaintiff that she was not entitled to a
4  preliminary injunction.  Nevertheless, Plaintiff forced Defendants to spend in excess
5  of $45,000 to oppose Plaintiff's motion for a preliminary injunction.  Plaintiff made
6  little to no effort to support her own motion, but did find time to issue four (4) press
7  releases to publicize her lawsuit and allegations, and her own documentary.

8  After undertaking its own review of the two movies, the Court denied
9  Plaintiff's request for a preliminary injunction, expressly finding that the two works
10 were "not substantively similar in terms of their 'theme, plot, sequence of events,
11 characters, dialogue, setting, mood and pace.'"  Dkt No. 32, Order Denying
12 Preliminary Injunction at 3.  The Court also explained that the works were less
13 similar than Plaintiff had alleged in her pleadings.  Brenner Decl., Ex. A, Hearing
14 Transcript at 5:13-17.  In response, Plaintiff quickly dismissed her copyright
15 infringement lawsuit.

16 The Copyright Act and the applicable law supports requiring Plaintiff to
17 reimburse Defendants for their attorneys' fees.  Otherwise, there would be no
18 disincentive for Plaintiffs to file meritless "emergency" complaints and motions in
19 copyright cases.  Particularly pertinent here, the Court had cautioned Plaintiff
20 against proceeding with her motion for a preliminary injunction, but Plaintiff
21 continued with her motion anyway (issuing press release after press release to
22 publicize her own work along the way).

23 For the foregoing reasons, Defendants respectfully request reasonable
24 attorneys' fees in the amount of $80,000.[2]

25

26 [2] A breakdown of Defendants' fees and costs is attached to the Declaration of Lee S.
27 Brenner, filed concurrently herewith.  The calculation of the requested fee is set
   forth in the Brenner Decl.  *See* Brenner Decl., Ex. F; *see also infra* Section IV.
28 (footnote continued)

## II.

## FACTUAL BACKGROUND

**A.    Plaintiff Intentionally Delays Seeking Injunctive Relief**

Plaintiff allegedly completed her documentary, *My Nappy Roots*, in early 2006. Dkt No. 20, Plaintiff's App. at 6; Compl. ¶ 18. As the Court found, and as Plaintiff admitted, Defendants' motion picture *Good Hair* has been publicly shown over nine (9) months ago at the January 2009 Sundance Film Festival. Dkt No. 21, Order Denying Plaintiff's Application for a TRO at 1; *see also* Compl. ¶ 21; Dkt No. 20, Kimbell Decl. ¶ 11.

Months ago, in August of 2009, Plaintiff saw a trailer for Defendants' film, *Good Hair*, at which point she came to the conclusion that "[Chris] Rock was [allegedly] planning the theatrical release of a film that incorporated elements of *My Nappy Roots*." Dkt No. 20, Plaintiff's App. at 4:22-24. Indeed, the *Good Hair* trailer contained numerous elements about which Plaintiff complained, including the business of Black hair, celebrity interviews, relaxer, and hair transported from India, among other things. *Id.*, Kimbell Decl., Ex. 4A, Trailer. Shortly thereafter, Plaintiff started setting up her lawsuit. On September 1, 2009 (over three years after she created her work), she filed an application to register her movie with the United States Copyright Office. *Id.*, Kimbell Decl. ¶ 1. Then, Plaintiff waited.

Plaintiff made no effort whatsoever to contact Mr. Rock or any of the Defendants during this time. Without notice or even a demand letter, Plaintiff waited until the last possible minute to seek "emergency" relief. In particular, Plaintiff waited to seek *ex parte* relief from the Court until the afternoon of October 6, 2009, less than three (3) days before *Good Hair's* scheduled theatrical release

---

Although Defendants are entitled to seek fees-on-fees for the preparation of this attorneys' fees motion, *see Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995), Defendants have chosen not to seek these fees from Plaintiff.

1  date.  *See* Dkt No. 20, Plaintiff's App. at 4.  On the afternoon of October 6, 2009,

2  Plaintiff first gave notice of her "emergency" application for temporary restraining

3  order, expedited discovery, and a preliminary injunction (collectively, the

4  "Application"), to which Defendants were required to respond within twenty-four

5  (24) hours.  *Id.*

6       In her Application, Plaintiff sought to prevent the release of *Good Hair*.  *See*

7  Dkt No. 20, Plaintiff's App.  Throughout her Application and Complaint, Plaintiff

8  *repeatedly* stressed that being granted injunctive relief was of vital importance in

9  bringing this action.  *Id.* at 1:25-27, 15:17-19; Compl. ¶¶ 76-77.

10 **B.     The Court Denies Plaintiff's Application for a TRO**

11      On October 8, 2009, the Court denied Plaintiff's request for a TRO.  *See* Dkt

12 No. 21, Order Denying TRO.  As the Court explained:

13          Plaintiff admits knowing about [*Good Hair*'s] planned
            public release since at least August 2009.  (Appl. at 4, 7.)
14          Nevertheless, Plaintiff makes this request a mere four days
            before Good Hair is set to be released in theaters.
15          Plaintiff's eleventh hour request is untimely, and in any
            event lacks merit.  For both of these reasons, the request is
16          DENIED.

17 Dkt No. 21, Order Denying TRO at 1.  Moreover, the Court emphasized:

18          Plaintiff does not explain the context in which [the]
            allegedly similar elements arise in the movies, but based
19          on the evidence submitted by the parties, it is clear the
            movies are not substantively similar in terms of their
20          "theme, plot, sequence of events, characters, dialogue,
            setting, mood and pace."
21

22 Dkt No. 21, Order Denying TRO at 6.  Finally, while the Court permitted Plaintiff to

23 proceed with her motion for a preliminary injunction, the Court expressly cautioned

24 Plaintiff that "[her] own allegations in this application *strongly suggest* she will be

25 / / /

26 / / /

27 / / /

28 / / /

246428.1.doc
4
NOTICE OF MOTION AND MOTION OF DEFENDANTS FOR ATTORNEYS' FEES

1    unable to establish that she is entitled to a preliminary injunction." *Id.* (emphasis

2    added).[3]

3    **C.      Plaintiff Makes Little To No Effort To Support Her Motion For A**

4    **Preliminary Injunction, But Makes An Enormous Effort To Issue Press**

5    **Releases Regarding Her Claims And Her Film**

6              Notwithstanding the Court's strong caution about proceeding with her motion

7    for a preliminary injunction, Plaintiff moved forward, but submitted only a three (3)

8    page supplemental brief in support of her request and some evidentiary objections.

9    *See* Dkt No. 30, Plaintiff's Supplemental Brief.  Plaintiff's brief presented no new

10   evidence that the works were somehow substantially similar.  *Id.*  At the same time,

11   Plaintiff forced Defendants to incur over $45,000 in additional fees and costs in

12   connection with Plaintiff's motion for a preliminary injunction.  Brenner Decl. ¶ 12.

13             In contrast to Plaintiff's lack of effort to support her own motion for a

14   preliminary injunction, Plaintiff *did* have time, between October 6 and October 19,

15   2009, to issue four (4) separate press releases regarding this litigation.  Brenner

16   Decl. Exs. B, C, D & E, Plaintiff's Press Releases.  Plaintiff's press releases were

17   over twice as long, in the aggregate, as her supplemental brief.  *Id.*  Moreover,

18   Plaintiff's press releases compel the conclusion that Plaintiff was more interested in

19   publicity for her own documentary than providing information regarding the merits

20   of the case.  *See, e.g., Id.*, Ex. D, Plaintiff's October 12, 2009 Press Release (not

21

22   _____

     [3] Plaintiff had requested "expedited discovery" for the ostensible purpose of having

23   her expert "provide a declaration in support of [her] application."  *See* Dkt No. 20,

24   Application at 19:11-14.  Thus, in connection with Plaintiff's motion for a

     preliminary injunction, the Court ordered that Defendants make *Good Hair*

25   available to Plaintiff's expert.  Dkt No. 21, Order Denying TRO at 6.  However, no

26   expert ever appeared, and Plaintiff never submitted any declaration of an "expert."

     *See* Dkt No. 30, Plaintiff's Supplemental Brief.  Instead, Plaintiff submitted only a

27   three (3) page supplemental brief and some evidentiary objections.  *Id.*

28

1   mentioning denial of TRO, but providing a detailed description of Plaintiff's

2   documentary).

3   **D.    The Court Denies Plaintiff's Request For A Preliminary Injunction And,**

4   **In Response, Plaintiff Quickly Dismisses Her Complaint**

5         In connection with Plaintiff's motion for a preliminary injunction, the Court

6   stated:

7           [A]fter reviewing [Plaintiff's and the Defendants' films],
            I'm even more convinced of the correctness of my
8           decision with regard to the TRO. I am not inclined to
            grant a preliminary injunction[.]
9
            ... [¶] The issue is whether [Defendants] copied
10          something that's copyrightable, and there is . . . less
            consistency . . . between the films than there seemed to be
11          based on the chart that [Plaintiff] gave me, which wasn't
            enough in itself. [¶] So some of those things, as I was
12          watching the film, just got crossed out because they
            weren't similar at all once one looked at the film.
13

14   Brenner Decl., Ex. A, Hearing Transcript at 3:20-22, 5:13-20. As such, the Court

15   held that "[b]ased on the evidence submitted by the Parties, and also on the Court's

16   own review of the two movies, it is clear the movies are not substantively similar in

17   terms of their 'theme, plot, sequence of events, characters, dialogue, setting, mood

18   and pace.'" *See* Dkt No. 32, Order Denying Preliminary Injunction at 3. The Court

19   denied Plaintiff's motion for a preliminary injunction. *Id.*

20         Two (2) days later, Plaintiff dismissed her Complaint against Defendants. *See*

21   Dkt No. 33, Plaintiff's Notice of Dismissal, dated October 21, 2009. Plaintiff has

22   refused to pay any of Defendants' fees or costs associated with her dismissed

23   copyright infringement lawsuit. Brenner Decl. ¶ 7.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

**III.**

2

## DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES PURSUANT TO

3

## THE COPYRIGHT ACT

4

**A.**     **Governing Standards For Attorneys' Fees Under The Copyright Act**

5

The Copyright Act of 1976 provides that in any copyright infringement

6

action, "the court may . . . award a reasonable attorney's fee to the prevailing party."

7

17 U.S.C. § 505. "'[E]xceptional circumstances' are not a prerequisite to an award

8

of attorneys' fees; district courts may freely award fees, as long as they treat

9

prevailing plaintiffs and prevailing defendants alike and seek to promote the

10

Copyright Act's objectives." *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th

11

Cir. 1996); *see also Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319,

12

325 (5th Cir. 1998) (award of attorneys' fees in copyright cases "are the rule rather

13

than the exception and should be awarded routinely") (citation omitted).

14

The Copyright Act requires that prevailing defendants and prevailing

15

plaintiffs be treated alike with regard to their entitlement to attorneys' fees in this

16

regard. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The United States

17

Supreme Court explained the significance of this requirement, as follows:

18

> Because copyright law ultimately serves the purpose of
> enriching the general public through access to creative

19

> works, it is peculiarly important that the boundaries of
> copyright law be demarcated as clearly as possible. To

20

> that end, defendants who seek to advance a variety of
> meritorious copyright defenses should be encouraged to

21

> litigate them to the same extent that plaintiffs are
> encouraged to litigate meritorious claims of infringement.

22

> . . . Thus a successful *defense* of a copyright infringement
> action may further the policies of the Copyright Act every

23

> bit as much as a successful prosecution of an infringement
> claim by the holder of a copyright.

24

25

*Id.* at 527 (emphasis added); *see also id.* at 535 (discretion in granting attorneys'

26

fees must be "applied to prevailing plaintiffs and defendants in an evenhanded

27

manner").

28

/ / /

1    In keeping with the foregoing, the Ninth Circuit has identified the following
2   factors which should be considered in deciding whether to award the prevailing
3   party in a copyright action its attorneys' fees: (1) degree of success obtained; (2)
4   objective reasonableness of factual and legal arguments; (3) frivolousness; (4)
5   motivation; and (5) need to advance considerations of compensation and deterrence.
6   *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir.
7   1996).

8   **B.    Defendants Should Be Awarded Their Attorneys' Fees**

9        **1.    Defendants Obtained Complete Success In This Action**

10    Plaintiff sought, on two separate occasions, to prevent Defendants from
11   releasing *Good Hair* on its scheduled release date. The Court denied both requests,
12   stressing on each occasion that it was doing so because Plaintiff was unable to
13   establish that she was likely to succeed on the merits of her copyright claim. After
14   twice being denied the relief she sought, and reviewing the Court's Opinion finding
15   against her on the key element of substantial similarity, Plaintiff dismissed her
16   complaint altogether.[4] As a result, Defendants secured complete relief in this action,
17   both during the pendency of the action itself, and as a result of Plaintiff's dismissal.

18

19   [4] The fact that Plaintiff's dismissal was voluntarily does not detract from the success
     that Defendants achieved. In *Watson v. Country of Riverside*, 300 F.3d 1029, 1094,
20   1096 (9th Cir. 2002), for instance, the Ninth Circuit concluded that the plaintiff,
     who had been *granted* a preliminary injunction, was the "prevailing party," even
21   though defendants were later granted summary judgment in the case. *Id.* (plaintiff
     "obtained significant, court-ordered relief that accomplished one of the main
22   purposes of the lawsuit"). Here, Defendants accomplished *all* of their objectives,
     including the denial of Plaintiff's *ex parte* application and request for preliminary
23   injunction, the timely release of *Good Hair*, and the dismissal of the Complaint. If,
24   under *Watson*, the granting of a preliminary injunction renders a plaintiff the
25   prevailing party, then the denial of a preliminary injunction should make Defendants
     the prevailing party. Any other rule would be contrary to the United States Supreme
26   Court's pronouncement that prevailing defendants and prevailing plaintiffs are to be
27   treated equally. *Fogerty*, 510 U.S. at 534.

28

**2.** **Plaintiff's Copyright Claim Was Both Objectively Unreasonable And Frivolous**

In order to merit an award of attorneys' fees, it is enough that the moving party demonstrate that non-moving party's claim was objectively unreasonable. *Williams v. Crichton*, 891 F. Supp. 120, 121-22 (S.D.N.Y. 1994); *Adsani v. Miller, PMA*, No. 94 CIV. 9131 (DLC), 1996 U.S. Dist. LEXIS 13740, at *41-52 (S.D.N.Y. Sept. 19, 1996); *Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ. 10135 (SAS), 2003 U.S. Dist. LEXIS 19086, at *24 (S.D.N.Y. Oct. 24, 2003). The moving party may satisfy its burden in this regard (as to a claim which is either objectively unreasonable *or* otherwise frivolous) by demonstrating that the claim suffers from any one of the following defects:

> (a) the claim is based upon alleged similarities of unprotectable elements, rather than similarity of protectable expression; or
>
> (b) the claim is based on "highly selective, scattered details"; or
>
> (c) the claim runs contrary to the evidence

*Adsani*, 1996 U.S. Dist. LEXIS 13740 at *47-51; *Williams*, 891 F. Supp. at 122; *Maljack*, 81 F.3d at 884, 890.

Plaintiff's claim suffered from each of these defects. First, Plaintiff's claim was premised on alleged similarities between unprotectable elements of her work and *Good Hair*. The Court concluded as much in response to Plaintiff's application for a TRO and her request for preliminary injunction. *See* Brenner Decl., Ex. A, Hearing Transcript at 3:20-22, 5:13-20; *see also* Dkt No. 21, Order 10/08/09 at 6; Dkt No. 32, Order 10/19/09 at 3. Plaintiff, however, made no effort to satisfy the extrinsic test for substantial similarity by citing to any protectable elements. Accordingly, in its October 19, 2009 Order, the Court emphasized that Plaintiff had failed, once again, to "explain why the allegedly similar aspects are protectable, as

/ / /

1 required for copyright analysis." Dkt No. 32, Order 10/19/09 at 3 (citing *Funky*
2 *Films v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006)).

3     Second, Plaintiff attempted to base her claim on a list of random similarities
4 between the works at issue. Again, the Court confirmed as much in its October 8,
5 2009 Order, in which the Court held that Plaintiff failed to "explain the context in
6 which [her] allegedly similar elements arise in the movies[.]" Dkt No. 21, Order
7 10/08/09, at 6. In its October 19, 2009, Order denying Plaintiff's request for
8 preliminary injunction, the Court reiterated that Plaintiff failed to organize her
9 similarities in the context of the two "movies' themes, plots, sequence of events,
10 characters, dialogue, setting, mood, and pace." Dkt No. 32, Order 10/19/09, at 3.
11 Notably, in her pleadings, Plaintiff made no effort whatsoever to conduct an
12 extrinsic test analysis for substantial similarity.

13     Finally, the majority of Plaintiff's alleged similarities were set forth without
14 any factual support whatsoever because they were often *contrary* to the works
15 themselves. A simple review of the works themselves revealed that they were
16 substantially <u>dis</u>similar. As the Court found, the works were not substantially
17 similar.

18     In addition to these flaws in Plaintiff's claim, her persistence in seeking a
19 preliminary injunction after the Court denied Plaintiff's Application for a TRO,
20 without addressing the specific, fatal defects in her claim that were identified by the
21 Court in its Order denying Plaintiff's TRO, was objectively unreasonable. *See* §
22 II.C., *supra*. Plaintiff's refusal to reconsider pursuing her claim and her failure to
23 make any effort to correct the manifest defects in her claim are simply further
24 evidence of the objective unreasonableness and frivolousness of her action.

25     **3.     Plaintiff's Improper Motive**

26     There is no question that a party's litigation tactics may provide evidence of
27 an improper motive in bringing and/or pursuing litigation. *Milton H. Greene*
28 *Archives, Inc. v. Julien's Auction House, LLC*, No. CV 05-7686 AHM (FMOx),

246428.1.doc

1  2007 U.S. Dist. LEXIS 96378, at *14 (C.D. Cal. Dec. 20, 2007) (citing *Yankee*

2  *Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 140 F. Supp. 2d 111, 118 (D.

3  Mass. 2001), *aff'd*, 259 F.3d 25 (1st Cir. 2001)).  For example, a plaintiff may

4  clearly be operating under an improper motive where it forces a defendant into

5  expensive litigation, despite having "access to sophisticated counsel who could have

6  determined that [Plaintiff's] suit was objectively unreasonable and frivolous."

7  *Mattel, Inc. v. Walking Mt. Prods.*, No. CV 99-8543 RSWL (RZx), 2004 U.S. Dist.

8  LEXIS 12469, at *7 (C.D. Cal. June 21, 2004); *see also Berry v. Hawaiian Express*

9  *Serv.*, No. 03-00385 SOM-LEK, 2006 U.S. Dist. LEXIS 87748, at *40 (D. Haw.

10  Dec. 4, 2006) ("Plaintiff's pursuit of his copyright claims . . . in spite of the lack of

11  evidence supporting them, is a strong indication that he had an improper

12  motivation.").

13      Here, Plaintiff's litigation strategy is clear evidence of an improper motive.[5]

14  As detailed above, Plaintiff's claim was manifestly unsupportable under copyright

15  law.  Knowing this, Plaintiff nonetheless purposefully delayed seeking "emergency"

16  injunctive relief until the last possible moment, and then coupled her litigation

17  tactics with a series of press releases publicizing her claims and her own

18  documentary.  *See* § II.A., *supra*.  In doing so, Plaintiff forced Defendants to devote

19  an enormous amount of time and money opposing her *ex parte* application and her

20  request for preliminary injunction, all within a few short weeks.  In the process,

21  _____

22  [5] Like the other factors set forth above, it is not necessary that Defendants
    demonstrate improper motive for an award of attorneys' fees. *Maljack Prods., Inc.*,

23  81 F.3d at 890.  To the contrary, courts have awarded attorneys' fees even where it
    cannot be determined "with sufficient certainty whether [the plaintiff] had an

24  improper motive for pursuing his copyright claims." *Love v. Mail on Sunday*, No.

25  CV 05-7798 ABC (PJWx), 2007 U.S. Dist. LEXIS 97061, at *16 (C.D. Cal. Sept. 7,

26  2007); *see also Maljack Prods., Inc.*, 81 F.3d at 890 (finding no bad faith, but
    awarding fees where other factors support an award); *Diamond Star Bldg. Corp. v.*

27  *Freed*, 30 F.3d 503 (4th Cir. 1994) (same).

28

246428.1.doc

1   Plaintiff and her counsel pursued a request for preliminary injunction knowing that

2   Defendants would spend additional resources on the effort, and *knowing* that

3   Plaintiff was not going to put *any* effort into remedying the multitude of defects that

4   the Court identified with her copyright claim.

5       Instead, it appears that Plaintiff focused more on using her lawsuit and request

6   for injunctive relief to garner publicity for *her* documentary.  Plaintiff and her

7   counsel devoted significantly more ink to their four separate press releases on this

8   lawsuit than they devoted to Plaintiff's three (3) page supplemental brief in support

9   of her request for a preliminary injunction.  Immediately after the Court denied her

10  request for a preliminary injunction, Plaintiff issued yet *another* press release (this

11  time, claiming that she supposedly "always knew that it would be tough getting the

12  judge to grant" her request).  Brenner Decl., Ex. E.

13      As set forth above, Plaintiff and her counsel's litigation strategy was designed

14  to force the Defendants into costly litigation despite an underlying claim that

15  Plaintiff knew was objectively unreasonably and frivolous.  Unless the Defendants

16  are awarded their attorneys' fees, Plaintiff's strategy will have succeeded.

17      **4.    Awarding The Defendants' Attorneys' Fees Will Deter The Pursuit**

18          **Of Manifestly Unreasonable Copyright Infringement Claims**

19      Courts have acknowledged that an award of attorneys' fees to prevailing

20  defendants may fulfill the "need . . . to deter [a] Plaintiff from advancing

21  unsupportable claims." *Love*, 2007 U.S. Dist. LEXIS 97061 at *16-17; *accord*

22  *Maljack*, 81 F.3d at 890.  Here, as detailed above, Plaintiff's claim was manifestly

23  unsupportable.  First, Plaintiffs application was untimely on its face.  Second,

24  Plaintiff could have minimized the damage caused by her failed litigation strategy

25  by withdrawing her request for a preliminary injunction (especially after the Court's

26  strong caution).  Instead, Plaintiff continued to waste the time and resources of both

27  the Defendants and this Court by persisting in her claims, without advancing *any*

28  new arguments, despite being given the opportunity to do so.  Two days after the

1 Court denied her request for preliminary injunction, Plaintiff simply dismissed her
2 claim.

3       In the interest of deterring Plaintiff, and others like her, from advancing
4 similarly meritless "emergency" requests for injunctive relief, Plaintiff should be
5 held responsible for at least a portion of Defendants' attorneys' fees.  Otherwise
6 there will be no disincentive for plaintiffs to file such frivolous motions.

7 **C.    Awarding Attorneys' Fees To Defendants Furthers The Purposes Of The**
8         **Copyright Act**

9       "The primary objective of copyright is . . . '[t]o promote the Progress of
10 Science and useful Arts.'  To this end, copyright assures authors the right to their
11 original expression, but encourages others to build freely upon the ideas and
12 information conveyed by a work." *Fogerty*, 510 U.S. at 527 (quoting *Feist Publ'ns,*
13 *Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991)).  The nonprotection of
14 ideas "is the means by which copyright advances the progress of science and art."
15 *Feist Publ'ns, Inc.*, 499 U.S. at 350.  Because copyright law enriches the general
16 public through access to creative works, these "boundaries of copyright law [must]
17 be demarcated as clearly as possible." *Fogerty*, 510 U.S. at 527.

18       As set forth above, Defendants' successful defense of this action furthered the
19 purposes of the Copyright Act because it maintained the boundaries of protected
20 expression.  Defendants vigorously disputed Plaintiff's claim of ownership over
21 basic ideas, generic formats, and elements, and the Court agreed.  Dkt No. 32, Order
22 10/19/09 at 3.  In light of these findings, awarding the Defendants their attorneys'
23 fees would be faithful to the purposes of the Copyright Act.

24                                    **IV.**

25       **UNDER THE LODESTAR APPROACH, THE DEFENDANTS ARE**
26       **ENTITLED TO ATTORNEYS' FEES IN THE AMOUNT OF $80,000**

27       In the Ninth Circuit, courts use the "lodestar approach" to calculate the
28 amount of attorneys' fees awards under federal fee-shifting statutes. *Staton v.*

246428.1.doc

13

1   *Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).  Under this approach, the lodestar is

2   calculated by "multiplying the number of hours the prevailing party reasonably

3   expended on the litigation by a reasonably hourly rate." *Morales v. City of San*

4   *Rafael,* 96 F.3d 359, 363 (9th Cir. 1996).

5       In determining the number of reasonable hours and the reasonable hourly

6   rate, the following *Kerr* factors guide the court:

7       (1) the time and labor required, (2) the novelty and difficulty of the
       questions involved, (3) the skill requisite to perform the legal service

8       properly, (4) the preclusion of other employment by the attorney due to
       acceptance of the case, (5) the customary fee, (6) whether the fee is

9       fixed or contingent, (7) time limitations imposed by the client or the
       circumstances, (8) the amount involved and the results obtained, (9) the

10      experience, reputation, and ability of the attorneys, (10) the
       "undesirability" of the case, (11) the nature and length of the

11      professional relationship with the client, and (12) awards in similar
       cases.

12

13  *Morales*, 96 F.3d at 363-64 (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67,

14  70 (9th Cir. 1975)); *see also McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th

15  Cir. 1995).

16      In determining the reasonable hourly rate, courts typically use the "prevailing

17  market rate in the relevant legal community [which is] the rates of attorneys

18  practicing in the forum district." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th

19  Cir. 1992).  The quality of representation is also "generally considered" in

20  calculating the reasonable hourly rate applied to the lodestar.  *Van Gerwen v.*

21  *Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000).

22      Reasonable attorneys' fees includes the work of associate attorneys and

23  support staff, such as paralegals because their "labor contributes to the work

24  product." *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1387 (9th

25  Cir. 1990) (citation omitted), overruled on other grounds by *Burlington v. Dague*,

26  505 U.S. 557 (1992).  Such fees also include "out-of-pocket expenses, including

27  travel, telephone, mailing, copying and computerized legal research expenses." *Sure*

28  *Safe Indus., Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993); *see also*

1  *Ford Motor Co. v. Kuan Tong Indus. Co., Ltd.*, 697 F. Supp. 1108, 1110 (N.D. Cal.
2  1987) (same).

3  After calculating the lodestar, if circumstances warrant the district court may
4  adjust the lodestar on the basis of *Kerr* factors that are not already subsumed within
5  it. *Morales*, 96 F.3d at 363-64; *McGrath*, 67 F.3d at 252. There is, however, "a
6  strong presumption that the lodestar figure is reasonable, and adjustments are to be
7  adopted only in exceptional cases." *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir.
8  1992); *see also Morales*, 96 F.3d at 363 (lodestar figure is "presumptively
9  reasonable").

10  In this case, counsel for the Defendants have reasonably expended over 310
11  hours of attorney time and over 52 hours of paralegal time successfully defending
12  against Plaintiff's application for a TRO and motion for a preliminary injunction.
13  *See* Brenner Decl. at ¶ 12. These hours include time spent performing, among other
14  things, legal research on Plaintiff's copyright claim, factual investigation,
15  interviewing witnesses, researching and drafting Defendants' Opposition to
16  Plaintiff's Application, researching and drafting Defendants' supplemental brief in
17  opposition to Plaintiff's request for a preliminary injunction, corresponding with
18  clients and opposing counsel, drafting declarations, gathering exhibits, and
19  preparing for the hearing on the Plaintiff's request for preliminary injunction.[6] *See*
20  Brenner Decl., Ex. F.

21  The rate charged by Defendants' counsel is a blended rate of $350 per hour
22  for all attorneys, partners and associates alike, and $105 per hour for paralegals.
23  Brenner Decl. ¶ 11. This hourly rate is a discounted rate, much less than the
24  prevailing market rate, and thus is a reasonable hourly rate. *See id.*; *see also Love*,

25

26  [6] The hours listed herein do not reflect the total time spent or fees and costs
27  incurred for the preparation of the instant motion, or for other services performed in
   connection with this litigation. *Id.* ¶ 12.

28

1 | 2007 U.S. Dist. LEXIS at *25 (awarding copyright attorneys' fees based upon, *inter*
2 | *alia*, a partner rate of $690 per hour, a junior associate rate of $305 per hour, and a
3 | senior paralegal rate of $245 per hour because "[t]hese rates are consistent with the
4 | rates typically charged by other highly-regarded southern California law firms for
5 | similar work").

6 |      Moreover, the quality and experience of Defendants' counsel amply
7 | demonstrate that the requested rate is more than reasonable. Lee S. Brenner is a
8 | named partner at White O'Connor Fink & Brenner LLP, serving as counsel for
9 | individuals, television networks, production companies, corporations and
10 | partnerships in business, employment, media and entertainment lawsuits. Brenner
11 | Decl. ¶ 8. Mr. Brenner has extensive experience in litigating complex civil matters
12 | in both state and federal court and specializes in copyright law. *Id.* Mr. Brenner has
13 | authored numerous articles on intellectual property and copyright and is often
14 | sought out for his expertise in copyright law. *Id.* ¶ 9. Edward E. Weiman is
15 | similarly a partner at White O'Connor Fink & Brenner LLP, representing major film
16 | and television production entities and other clients in copyright, idea submission,
17 | general business and antitrust litigation. Mr. Weiman frequently provides in-house
18 | lectures to entertainment clients on the subjects of copyright and intellectual
19 | property. *Id.* ¶ 10. Thus, counsels' requested rate should be used to calculate the
20 | lodestar.

21 |      Counsels' hourly rate multiplied by the reasonable hours incurred comes to a
22 | total of $ 113,960. Brenner Decl. ¶ 12. This is the lodestar amount for Defendants'
23 | defense of this action. Indeed, by using counsel's discounted rates, the lodestar
24 | already reflects a substantial reduction in attorneys' fees that should not be further
25 | reduced. Thus, Defendants are entitled to an award of $80,000, which is less than
26 | the lodestar amount pursuant to Section 505 of the Copyright Act.
27 | / / /
28 | / / /

246428.1.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court award them $80,000 in reasonable attorneys' fees and costs pursuant to Section 505 of the Copyright Act and Rule 54 of the Federal Rules of Civil Procedure.

DATED: November 4, 2009 WHITE O'CONNOR FINK & BRENNER LLP
Lee S. Brenner
Edward E. Weiman
Tami Kameda

By      /s/ Lee S. Brenner
Lee S. Brenner
Attorneys for Defendants Chris Rock Enterprises,
Inc., Home Box Office, Inc., Liddell Entertainment,
LLC, and Roadside Attractions LLC

246428.1.doc

17